UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| HOMER THOMAS, | : | | |
| Plaintiff, | : | Civil Action No.: | 13-1590 (RC) |
| v. | : | Re Document No.: | 9, 13 |
| ROBERT WILKINS, U.S. DISTRICT JUDGE, *et al*. | : | | |
| Defendants. | : | | |

## **MEMORANDUM OPINION**

### GRANTING DEFENDANTS' MOTION TO DISMISS

### I. **INTRODUCTION**

Homer Thomas brings this action against United States Circuit Judge Robert L. Wilkins[1] and his former Courtroom Deputy Clerk, Terri Barrett, challenging certain actions that allegedly occurred during another of Plaintiff's lawsuits over which then District Court Judge Wilkins presided. Specifically, Plaintiff alleges that the Defendants violated his Constitutional rights and engaged in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, by allegedly refusing to file certain court documents and committing other alleged harmful legal actions. The Defendants moved to dismiss on grounds of judicial immunity, failure to state a claim, and lack of standing. For the reasons that follow, the Court will grant the Defendants' motion.

---

[1] The present litigation concerns actions taken while Judge Wilkins was serving as a judge on the District Court for the District of Columbia.

## II. FACTUAL ALLEGATIONS

Plaintiff was a party to a previous suit pending before Judge Wilkins, *Coe, et al. v. Holder, et al.*, 1:13-cv-00184-RLW, in which Plaintiff and several other individuals attempted to challenge certain foreclosures in Texas through a suit against various financial companies, the Attorney General of the United States, and the Attorney General of Texas. *See Coe*, ECF Nos. 1-2). This suit concerned a large settlement between mortgage servicers, the federal government, and forty-nine state attorneys general. *See id.*

Plaintiff alleges that during the course of this suit, Judge Wilkins and his courtroom deputy clerk, Terri Barrett, improperly rejected several filings, failed to acknowledge certain filings, and documented receipt of certain filings on erroneous dates. *See* Compl. at 6-12, ECF No. 1. Specifically, Plaintiff challenges five separate acts as violations of RICO and the First and Fifth Amendments: (1) Defendants' refusal to grant Plaintiff leave to file an "Emergency TRO/PI" motion and refusal to file said TRO/PI motion; (2) Defendants' refusal to file Plaintiff's Motion for Reconsideration averring that the court miscalculated the time limits to file an amended complaint; (3) Defendants' refusal to file Plaintiff's "Motion for sum certain Default Judgment,...Affidavits in support,...proposed Order, and ... request for entry of default"; (4) Defendants' refusal to file Plaintiff's petition for Writ of Mandamus; and (5) Defendants' refusal to file Plaintiff's Motion for Reconsideration of the Judge's previous Order. *See* Compl. at ¶¶ 44-48. Plaintiff alleges that both Judge Wilkins and Ms. Barrett were acting in an administrative capacity while performing these acts, and not a judicial capacity. *See id.* at ¶¶ 5-6.

As result of these actions, Plaintiff alleges that his First Amendment right to petition[2] and Fifth Amendment due process rights have been violated. *See* Compl. Count I. Further, Plaintiff asserts that the Defendants' actions constituted a "pattern of racketeering activity" in violation of RICO. *See* Compl. Count II. Plaintiff seeks both damages and declaratory and injunctive relief. Compl. at 18-19. Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction[3], and 12(b)(6), for failure to state a claim, arguing that Plaintiff's claims are barred by judicial immunity. *See* Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss, ECF No. 13 ("Def.'s Mot.). The Court now turns to the relevant legal standards.[4]

---

[2] While Plaintiff does not specifically assert which of his First Amendment rights have been violated, Plaintiff appears to refer to his right to "petition the Government for a redress of grievances." U.S. Const. amend I; *see also Cheeks v. Fort Myer Const. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C. 2010) ("Where . . . the action is brought by a *pro se* plaintiff, the Court must take particular care to construe the plaintiff's filings liberally, for such complaints are held 'to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

[3] Because the Court finds Plaintiff's claims barred by judicial immunity, it does not reach Defendants' standing argument.

[4] In a separate motion, Plaintiff moved to disqualify the United States from representing the Defendants in this matter claiming a conflict of interest because the United States Attorney General is a named defendant to the underlying suit. *See* Pl.'s Mot. to Disqualify 3, ECF No. 9. The United States argues that it has broad discretion to participate in the suit pursuant to 28 U.S.C. § 517. *See* Opp'n to Pl.'s Mot. to Disqualify 1, ECF No. 10. The Court agrees. Section 28 U.S.C. § 517 allows "any officer of the Department of Justice" to "attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C. § 517. This Circuit has previously recognized the "entirely discretionary nature of [this] power and the breadth of that discretion," and that "neither the statute, nor any regulation, nor any administrative practice cabins this discretion or furnishes any standard by which to review the Attorney General's determinations in this area." *Falkowski v. EEOC*, 783 F.2d 252, 253 (D.C. Cir. 1986) ("We further observe that the Attorney General has long possessed the power to decide whether to provide counsel for a federal employee."). Because Judge Wilkins and Deputy Clerk Barrett are federal employees, the United States has authority to provide representation to protect its interests. *See Hall v. Clinton*, 143 F. Supp. 2d 1, 4 (D.D.C. 2001) (noting that under § 517, the Attorney General is "empowered to provide representation whenever in his opinion [the United States'] interests may be jeopardized," and further explaining that this decisions is "non-reviewable") (citations omitted). Moreover, Plaintiff has failed to demonstrate that the *individuals* handling this case on behalf of the Defendants have an actual conflict of interest.

## III. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" so as to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). A court, however, need not accept a plaintiff's legal conclusions as true, *see Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is not necessary for the plaintiff to plead all elements of her *prima facie* case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Moreover, when a *pro se* claimant is involved, "the Court must take particular care to construe the plaintiff's filings liberally, for such [filings] are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Cheeks,* 722 F. Supp. 2d at 107 (quoting *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972)). Yet, "even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. D.C. Office of the Mayor,* 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal,* 556 U.S. at 678). Dismissal remains appropriate "where the plaintiff's complaint provides no factual or legal

basis for the requested relief." *Strunk v. Obama*, 880 F. Supp. 2d 1, 3 (D.D.C. 2011) (internal citations omitted).

## IV. ANALYSIS

Plaintiff argues that the Defendants rejected various court filings and engaged in other harmful legal actions while acting in an administrative capacity in violation of the Constitution of the United States and RICO. *See* Compl. Count I & II. The Defendants argue that the Court should dismiss the action because Plaintiff's claims are barred by judicial immunity, and thus Plaintiff's Complaint fails to state a claim. *See* Def.'s Mot. at 1. The Court agrees.

### A. Plaintiff's Claims Against Judge Wilkins Are Barred By Judicial Immunity

Plaintiff alleges that Judge Wilkins, while acting in an administrative capacity, violated his First and Fifth Amendment rights by refusing to file certain court documents that Plaintiff had proffered. *See* Compl. at 6-11. The Defendants argue that these actions were taken in a judicial capacity, and thus are protected under the doctrine of judicial immunity. *See* Def.'s Mot. at 4.

Judges are absolutely immune from suits for money damages for "all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of all jurisdiction." *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993); *see also Mireles v. Waco*, 502 U.S. 9, 9 (1991) (acknowledging that a long line of Supreme Court precedents have found that a "judge is immune from a suit for money damages"); *Caldwell v. Kagan*, 865 F. Supp. 2d 35, 42 (D.D.C. 2012) ("Judges have absolute immunity for any actions taken in a judicial or quasi-judicial capacity."). "The scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Further, "a judge will not be deprived of immunity because the action he took was in error, was

done maliciously, or was in excess of his authority." *Id.*; *see also Mireles*, 502 U.S. at 11 ("[J]udicial immunity is not overcome by allegations of bad faith or malice."). In determining whether a judge was acting in his judicial capacity, courts should look to the "nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12 (quoting *Stump*, 435 U.S. at 362).

Here, Judge Wilkins was clearly acting in his judicial capacity when he refused to file various court documents submitted by Plaintiff. A judge's decision to file or deny a party's motions or requests is an action routinely performed by a judge in the course of litigation, and thus would constitute a judicial act immune from suit. *See Jenkins v. Kerry*, 928 F. Supp. 2d 122, 134 (D.D.C. 2013) ("[A] judge acting in his or her judicial capacity—i.e., performing a function normally performed by a judge—is immune from suit on all judicial acts.") (citations and quotations omitted); *Sibley v. U.S. Supreme Court*, 786 F. Supp. 2d 338, 344 (D.D.C. 2011) (explaining that the "receipt and processing of a litigant's filings are part and parcel of the process of adjudicating cases") (citations omitted); *Doggett v. Gonzales*, No. 06-0575, 2007 WL 2893405, at 3 (D.D.C. 2007) (noting that "[r]esolution of a motion filed by a party" is "characterized as judicial action") (quotations and citations omitted). In fact, courts have upheld judicial immunity in a multitude of scenarios involving functions performed less commonly by judges than those alleged here. *See Mireles*, 502 U.S. at 11-12 (judge was performing a judicial function when he directed officers to physically bring lawyer who was late into his courtroom and excessive force was allegedly applied); *Stump*, 435 U.S. at 360-63 ((judge who ordered sterilization of fifteen-year-old girl was absolutely immune from suit even if Indiana law did not authorize his acts).

Further, Judge Wilkins' actions are dissimilar from the types of employment actions that courts have found to be "administrative acts," as Plaintiff alleges they are, s*ee Forrester v. White*, 484 U.S. 219, 229 (1988) (finding that judge's act of demoting and discharging probation officer was an administrative act); *Kurowski v. Krajewski*, 848 F.2d 767, 773-74 (7th Cir. 1988) (judge's firing of public defenders on basis of their political beliefs was an administrative act not entitled to judicial immunity), and were surely not taken "in the complete absence of all jurisdiction." *See Stump*, 435 U.S. at 357 n.7 (giving the example of a "probate judge . . . try[ing] a criminal case", as an example of a judge acting in the absence of jurisdiction). Likewise, Plaintiff's contention that Judge Wilkins allegedly "used his office as a weapon against [him] and sabotaged the entire case by falsifying documents, destroying documents and infiltrating the administrative office of the clerk to perpetuate his malicious endeavors" is immaterial. Pl.'s Opp'n to Def.'s Mot. to Dismiss 1, ECF No. 15 ("Pl.'s Opp'n Mot."). Under the doctrine of judicial immunity, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump*, 435 U.S. at 356. Therefore, because Judge Wilkins was acting in his judicial capacity when he refused to file Plaintiff's submissions and took the other acts Plaintiff alleges were wrongful, Plaintiff's claims are barred by judicial immunity.

### B. Plaintiff's Claims Against Deputy Clerk Barrett Are Also Barred by Judicial Immunity

Plaintiff also alleges that Judge Wilkin's Deputy Clerk, Terri Barrett, violated his Constitutional rights by refusing to "file, docket, or acknowledge" certain court filings of Plaintiff's. *See* Compl. at 11-13. The Plaintiff further alleges that these acts were taken in an administrative capacity, and thus are not protected by judicial immunity. *Id*. But Defendants

correctly argue that Plaintiff's claims against Barrett are barred because judicial immunity extends not only to judges, but to court staff as well. Def.'s Mot. at 4.

"Clerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process." *Sindram*, 986 F.2d at 1460; *see also Roth v. King*, 449 F.3d 1272, 1287 (D.C. Cir. 2006) ("It is well established that judicial immunity 'extends to other officers of government whose duties are related to the judicial process.'") (quoting *Barr v. Matteo* 360 U.S. 564, 569 (1959)); *Hester v. Dickerson*, 576 F. Supp. 2d 60, 62 (D.D.C. 2008) ("In this Circuit, absolute judicial immunity extends to clerks of the court.") (citations omitted). If immunity were not extended to clerks performing judicially related tasks, "courts would face the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly would vent their wrath on clerks, court reporters, and other judicial adjuncts." *Sindram*, 986 F.2d at 1461 (citations omitted).

Here, Ms. Barrett's actions that the Plaintiff is challenging—the refusal to file certain court submissions—are the same actions allegedly committed by Judge Wilkins. As explained above, these actions are clearly an "integral part of the judicial process" warranting absolute immunity from suit. *See Sindram*, 986 F.2d at 1461 (finding that a clerk "instituting an erroneous order against [a] [p]laintiff barring his access to the court" was performing an "integral part[] of the judicial process"); *Sibley*, 786 F. Supp. 2d at 344 ("The clerk or deputy clerk's receipt and processing of a litigant's filing are part and parcel of the process of adjudicating cases."); *Reddy v. O'Connor*, 520 F. Supp. 2d 124, 130 (D.D.C. 2007) (holding that a "deputy clerk's alleged refusal to file documents [the] plaintiff submitted" was an action "quintessentially 'judicial' in nature because [it was] an integral part of the judicial process"). Thus, because

8

Defendant Barrett was acting in her capacity as a judicial clerk performing tasks that are an integral part of the judicial process, she is entitled to absolute immunity.

### C. Plaintiff's RICO claims Are Likewise Barred

Plaintiff alleges that the Defendants engaged in a "pattern of racketeering activity" in violation of RICO. *See* Compl. at 17. Specifically, Plaintiff complains of a "scheme to punish and silence [him] for having exercised his right of access to the courts, and to execute" this scheme by "depriv[ing him] of the intangible right of honest services'." *Id*. at 15.

In addition to the overall principle making it clear that a "judge is immune from a suit for money damages," *Mireles*, 502 U.S. at 9, courts have further specified that RICO claims are barred under the doctrine of judicial immunity. *See Blackburn v. Calhoun*, No. 207CV166, 2008 WL 850191, at *21 (N.D. Ala. Mar. 4, 2008); *Stone v. Baum*, 409 F. Supp. 2d 1164, 1175 (D. Ariz. 2005) (judges who issued rulings were entitled to absolute judicial immunity from liability in subsequent action alleging RICO violations, where alleged acts were judicial acts taken within each court's jurisdiction); *Rolfes v. MBNA America Bank N.A.*, 416 F. Supp. 2d 745, 749 (D.S.D. 2005) (state court judge was entitled to absolute immunity from plaintiff's claims for monetary damages under RICO based on judge's entry of judgment against her). In *Blackburn*, the court found that a plaintiff's RICO claims—alleging a judge, who had previously presided over his divorce, conspired to run a "good ole white boys' club" in the Jefferson County, Alabama circuit court system—were barred by judicial immunity. *Blackburn*, 2008 WL 850191, at *1, 21. The court explained that "RICO claims must be denied if they simply constitute another way of attacking a judge's rulings," and that judicial immunity "applies where the RICO-challenged acts are judicial in nature." *Id*. at *21. Thus, the *Blackburn* court held that to overcome judicial immunity, the same as in other contexts, a plaintiff asserting a RICO violation "must allege facts

showing that the judge was not acting in his judicial capacity, or that he acted in the complete absence of all jurisdiction." *Id*.

Here, Plaintiff's RICO claims alleging a "pattern of racketeering activity" are predicated on the same actions—i.e., the Defendants' withholding of and refusal to file several of Plaintiff's documents—underlying Plaintiff's Constitutional claims. Compl. at ¶¶ 56-59. Therefore, while Plaintiff attempts to circumvent the judicial immunity doctrine by asserting RICO claims against the Defendants in their personal capacities, the actions Plaintiff is challenging were performed within the scope of the Defendants' judicial duties. Thus, because the acts underlying the Plaintiff's RICO claims were "judicial in nature," they are similarly protected by the judicial immunity doctrine. *See Blackburn*, 2008 WL 850191, at *21 ("[Judicial] immunity applies where the RICO-challenged acts are 'judicial in nature'.") (citations omitted); *Sisk v. U.S.*, No. 06-2396, 2007 WL 1963000, at *3 ("[A] judicial act does not become less judicial by virtue of an allegation of malice, corruption or conspiracy…[n]either does the fact that a RICO violation is alleged change the fact of judicial immunity," as long as the acts "were judicial in nature."). Accordingly, the Defendants' actions of refusing to file several of Plaintiff's court documents are certainly within the scope of their judicial duties, and thus are appropriately protected under judicial immunity, notwithstanding Plaintiff's attempted RICO claim.

### D. The Court Cannot Grant Plaintiff Equitable Relief As This Is Not A Reviewing Court

To the extent Plaintiff seeks declaratory and injunctive relief, this is not the appropriate avenue to seek such relief. This Court is not a "reviewing court and cannot compel . . . other Article III judges in this or other districts or circuits to act." *Sibley*, 786 F. Supp. 2d at 345. "Declaratory relief against a judge for final actions taken within his or her judicial capacity is . . . available by way of direct appeal of the judge's order." *Jenkins*, 928 F. Supp. 2d at 135; *see also*

*Lewis v. Green*, 629 F. Supp. 546, 553 (D.D.C. 1986) (District Court explaining that "[c]hallenges to rulings made during the course of judicial proceedings should be made by appeal in those cases," before noting that it lacked the authority to issue an order compelling another District Court to vacate an earlier decision). "Simply stated, neither the public interest, nor the interests in practical judicial administration, would be served by a federal court reviewing the decisions of our local judicial officers who are acting pursuant to their judicial authority." *Hoai v. Superior Court*, 539 F. Supp. 2d 432, 435 (D.D.C. 2008).

Here, Plaintiff seeks injunctive relief asking the Court to compel the Defendants to refrain from "retaliating, blocking, or otherwise obstructing Plaintiff from filing his court documents." Compl. at 19. As this Court lacks the authority to review another District Court's decisions, it cannot compel the Defendants to take the action Plaintiff requests. *See Sibley*, 786 F. Supp. 2d at 345. Further, to the extent Plaintiff requests a declaratory judgment "declaring Defendants' [actions]. . . non-judicial in nature" and "unconstitutional," this claim cannot survive. "The Declaratory Judgment Act neither expands a court's jurisdiction nor creates new substantive rights." *B. Braun Med., Inc. v. Abbot Labs.*, 124 F.3d 1419, 1428 (Fed. Cir. 1997). The Act was not intended to "allow a declaratory judgment plaintiff to avoid the requirements imposed by the substantive law as a predicate to obtaining such relief." *Id.* Accordingly, "a request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997). Given that this Court, as set forth above, has concluded that Plaintiff's substantive claims are barred by judicial immunity because Defendants' actions were, in fact, judicial in nature, Plaintiff's claims for declaratory relief are likewise barred, and thus must also fail.

## V. CONCLUSION

For the foregoing reasons, the Defendants' motion is GRANTED. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 24, 2014                                         RUDOLPH CONTRERAS
                                                             United States District Judge